**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JENNIFER BROWN

                Plaintiffs,                            Case Action No.: 1:08cv372

        v.                                       Judge Michael R. Barrett

CINCYAUTOS, INC.,

                Defendant.

## ORDER

This matter is before the Court pursuant to Defendant's motion for summary judgment (Doc. 33). Plaintiff filed a memorandum in opposition (Doc. 36) to which Defendant replied (Doc. 38). For the foregoing reasons, Defendant's motion is hereby GRANTED, in part, and DENIED, in part.

    I.    Relevant Facts.

Plaintiff brings the following causes of actions against Defendant: Breach of Contract, Magnuson Moss Act violations, Consumer Sales Practices Act violations, FTC Used Car Window Sticker Rule and Consumer Act violations, Motor Vehicle Sales Rule violations, Fraud and Deceit, and Motor Vehicle Repair Rule violations. Defendant moves for summary judgement on all claims except the FTC Used Car Window Sticker Rule and Consumer Act violations where it moves for judgment on its bona fide error defense.

    A.    The purchase.

Plaintiff Jennifer Brown ("Brown") purchased a used "Certified Pre-Owned" 2003 Jeep Liberty ("Jeep") on May 5, 2007 from Defendant CincyAutos, Inc. f/d/b/a Kings Jeep ("CincyAutos"). At the time of purchase, the Jeep had over 64,000 miles on it. Brown asserts that this purchase was her first independent vehicle purchase; however, she did

previously purchase a used Saturn but her parents were with her and co-signed the loan for her. (Doc. 14, p11).

Brown states that when she asked what "Certified Pre-Owned" meant that the sales associate, Larry Diefenbach ("Diefenbach"), told her that it had been through a 125-point inspection and that the Jeep was "built brand new with a previous owner." (Brown Affidavit, Doc. 36, Exh. 1). Brown stated in her deposition that she understood "Certified Pre-Owned" to mean that every part under the hood was brand new. (Brown Depo., Doc. 14, p21). Brown also states that Diefenbach told her the car had been in a minor fender bender. Although Diefenbach does not remember the sale to Brown, he denies that he would make such a statement. He states that he would not make a statement about the accident history of a car because he does not know the history unless it comes with a Carfax report and if it does come with a Carfax report that he would not make any statements that contradict that report. (Doc. 33, Tab C). A Carfax report did accompany this transaction. The Carfax report clearly indicates that the Jeep had been involved in two accidents, one causing severe damage. This Carfax report was provided to Brown prior to the purchase. Brown, in her deposition, states that she was given the Carfax report prior to making her decision to purchase the Jeep. (Brown Depo., Doc. 14, p31). However, in her affidavit, she states that it was given to her after she decided to make the purchase but prior to signing the paperwork. (Brown Affidaivt, Doc. 36, Exh. 1).

The Jeep was listed for sale at $13,995. Brown had a trade-in vehicle with a value of $1,000 with a $3,000 pay off amount. CincyAutos had agreed to take $1,000 off the list price. Therefore, with the price reduction and trade-in value the purchase price of the Jeep was reduced to $11,995 plus the $3,000 pay off amount for a total of $14,995 plus tax, title, and fees for a grand total of $16,788.60. Brown signed all the necessary paperwork and

left the lot with the Jeep. However, a few days later Brown received a phone call from CincyAutos stating that she was not approved for the financing and that she needed to come back in to sign the necessary paperwork again. CincyAutos then lowered the price by $788.60 so that Brown could qualify for financing. Brown now agrees that this pricing structure was correct. (Brown Depo, Doc. 14, p. 60).

When Brown purchased the jeep she was given the "Buyers Guide;" however, the "Buyers Guide" was not displayed in the window of the Jeep when she was looking at it. (Doc. 36, Exh. 1). In addition, as this Court has already found, the Buyers Guide did not contain the name and address of the dealer and the name and telephone number of a person to contact to complain.

B.     The repairs.

Due to the "Certified Pre-Owned" designation the Jeep came with a limited warranty that included an 8 year/80,000 mile powertrain warranty and a 3 month/3,000 mile mechanical warranty. Almost immediately after Brown purchased the Jeep she experienced problems with it. Brown first complained, a few days after the purchase, of a burning smell, a ticking rattle type noise, and that the Jeep was acting like it was going to stall. The brake caliper and a tensioner belt were replaced but the service technician could not duplicate the "stalling" problem.[1] (Brown Depo., Doc. 14, Exh. 11). Then on August 9, 2007 Brown brought the Jeep in for a free oil change (Id. at Exh. 12). Next, on October 15, 2007, the Jeep would not start and had to be towed to CincyAutos for service. The battery was replaced, fluids in the front and rear differentials were changed, and the

_____

[1]Brown takes issue with the fact that this repair order was opened on May 9, 2007 but not closed until June 18, 2007. However, CincyAutos explains that it is its practice to keep a repair order "open" until the warranty payment is made by Chrysler. (Doc. 38, Exh. A). Brown has not disputed this assertion.

transmission, throttle body plate and transfer case were serviced. (Id. at Exh. 13).[2] On January 5, 2008 Brown brought in the Jeep for a free oil changed and complained that the Jeep pulls to the left. The service technicians added air to the tires and then rotated and aligned them, which included making minor repairs to adjust the alignment. (Id. at Exh. 14).

On January 8, 2008 Mark Pittman called Brown and told her that "he was sorry about all the trouble with the vehicle and that he was going to get her in another vehicle and make this 'better.'" (Brown Affidavit, Doc. 36, Exh. 1, ¶12). Pittman set up a meeting with Brown and Benny Watson from the dealership but Pittman failed to attend. (Id.). Watson told her that he would never have certified a vehicle as old as the Jeep and that he was going to ask Pittman to get her in another vehicle or get her some money back. Brown never heard back from Watson or Pittman after that. Pittman denies that these conversations took place.

The Jeep broke down again on May 30, 2008, the day before Brown was to leave on vacation. Smoke came out from under the hood and transmission fluid leaked onto the street. Due to this problem she was unable to take the Jeep on vacation. However, there is no evidence in the record of her having the Jeep repaired following this break down. Brown does not even state that she had to take any steps to have it repaired.

On July 10, 2008 the Jeep broke down while Brown was driving it. She was able to make it driveable it by replacing a v-ribbed belt she purchased from Autozone. (Doc. 36, Exh. 1B). On July 16, 2008, Brown took the Jeep to Hamilton-Fairfield Dodge Jeep where

---

[2]On September 1, 2007 Kings Jeep franchise merged with Kings Dodge. From that time forward Kings Dodge assumed the responsibility of performing warranty repairs on Chrysler cars purchased at Kings Jeep. Therefore, when this order states that CincyAutos made certain repairs, they, depending on the time frame, may, in fact, have been made by Kings Dodge as the successor to Kings Jeep. (See Doc. 38, Exh. A and B).

they replaced the water pump and replaced the left front axle. (Id. at 1C). Then on August 12, 2008, Brown again took the Jeep to Hamilton-Fairfield Dodge Jeep to check for over heating. The service technician recommended replacing the air conditioning compressor which she elected not do presumably because it was not covered under the warranty any longer. (Id. at 1D).

Brown was not charged for any of the above repairs or for the use of a rental car. (Doc. 14, p53). Although the warranty requires a $100 deductible, CincyAutos did not require her to pay that deductible. (Id. at 93). She did have to pay it at Hamilton-Fairfield Dodge Jeep.

Brown also alleges that CincyAutos failed to document each repair, that she was not given a copy of necessary paperwork documenting the repairs, that the invoices fail to identify the mechanic performing the repairs and that she was not offered any of the used parts that were replaced on her vehicle.

As of the taking of Brown's deposition, she was still driving the Jeep and it had over 80,000 miles on it. (Doc. 14, pp13-14).

II.    Legal Analysis.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its

burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also *L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc.,* 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 98 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Beatty v. UPS,* 267 F. Supp. 2d 823, 829 (S.D. Ohio 2003).

A.    Breach of Contract and Breach of Express and Implied Warranties

Brown alleges in her Complaint that CincyAutos breached the contract and breached certain express and implied warranties by delivering a vehicle that failed to "conform to the representations of [CincyAutos] inasmuch as it developed continuing

malfunctions, defects and problems" and was not repaired in a reasonable amount of time. (Doc. 2, ¶20, 23).

As to its claim for breach of express warranties, Brown focuses on the argument that the Defendant "failed to fix the problems with the vehicle within a reasonable amount of time or a reasonable number of attempts." (Doc. 36, p9). Brown argues that she took the vehicle in for repairs at CincyAutos at least five times: "two trips for the burning smell from the brakes, two trips for the vehicle acting like it was going to stall, two trips for a rattle and tick at idle, and one trip each for a no start, transmission defects, frame alignment, front and real differential defects, transfer case defects, throttle body defects, and more." (Doc. 36). Although the documents support the problems that Brown incurred with the Jeep they do not support the number of "trips" needed to correct the problems. Based upon the documents provided, the following chart summarizes the vehicle repair history of the Jeep and shows that the Jeep was brought to CincyAutos for repair four times.

| Date of Service | Complaints | Repairs |
|---|---|---|
| 5/9/2007 | a burning smell, a ticking rattle type noise, and acting like it is going to stall | brake caliper and tensioner belt replaced; technician could not duplicate the "stalling" problem |
| 8/9/07 | need oil change | oil changed |
| 10/15/07 | Jeep would not start and had to be towed | battery replaced; front and rear differentials, transmission, throttle body plate and transfer case serviced (i.e., added fluids) |
| 1/5/08-1/11/08 | need oil change; Jeep pulls to the left | air added to tires; rotated and aligned tires; made repairs to adjust the alignment |
| 5/30/08 | Broke down with smoke coming out from under the hood and leaked transmission fluid | no evidence of any repair or attempt to have it repaired |
| 7/10/08 | Lost power steering, car died on road | Brown replaced a belt she purchased at Autozone to make it driveable |

| 7/16/08 | No evidence of complaints in the record | Hamilton-Fairfield Dodge Jeep replaced water pump; replaced left front axle |
|---------|------------------------------------------|------------------------------------------------------------------------------|
| 8/7/08  | Over heating | Hamilton-Fairfield Dodge Jeep recommended replacing air conditioning compressor; instead she installed a smaller belt to bypass the compressor |

Plaintiff admitted in her deposition that the documents produced by her counsel were an accurate characterization of the number of times the vehicle had been in the shop for repair. (Doc. 14, p15). In addition to the repairs listed above, Brown did bring the Jeep back to CincyAutos within days of her purchase to retrieve a keyless entry that was not given to her at the time of purchase. (Doc. 14, p90; Doc. 38, Exh. A).

Plaintiff argues that based on the sheer number of times that the vehicle had to be repaired a reasonable jury could find that CincyAutos failed to fix the problems with the Jeep within a reasonable amount of time or a reasonable number of attempts, thereby breaching its warranty. To bring a claim for a breach of warranty, Plaintiff must show that the Jeep was nonconforming, that CincyAuto was given a reasonable opportunity to cure the defects and that it failed to do so within a reasonable time or within a reasonable number of attempts. *Temple v. Fleetwood Enters., Inc.*, 2003 U.S. Dist. LEXIS 26507. Although it is uncontested that Brown had to have the Jeep repaired, there is no evidence that the problems were not corrected and no evidence that they were not corrected in a timely fashion. Thus, there is no genuine issue material fact as to this issue.

As to the limited warranty claims, Plaintiff argues that the Jeep was not merchantable and fit for the ordinary purpose for which it was intended. More specifically, due to its repair history the Jeep is not fit for safe driving and reliable transportation. Relying on O.R.C. § 1302.93(B) and *Goddard v. General Motors Corp.*, 60 Ohio St.2d 41

(1979), Plaintiff argues that CincyAutos was unable to "fulfill its warranted obligation to effectively repair or replace defects" in the Jeep. Again, based upon its repair history, Plaintiff argues that a reasonable jury could find that CincyAutos breached its warranty. To prove this Plaintiff must show that the issues she had with the Jeep were not ordinarily ones experienced by others with similar cars with similar miles on them. *Felger v. I-Deal Auto Sales*, 1997 Ohio App. LEXIS 5055 (Ohio Ct. App., Van Wert County Oct. 31, 1997)("The warranty is breached when the goods are not of the quality comparable to that generally acceptable in the trade for goods of the kind involved."). The only evidence presented by Plaintiff as to similar cars with similar miles favors CincyAutos by showing that others were experiencing the same problems she was experiencing. According to Brown, "Kevin" from the service department told her that he's had five jeeps with similar alignment problems. (Doc. 14, p103). In addition, the evidence is clear that CincyAutos did timely repair the Jeep each time Brown brought it in for service. There is no evidence that Brown brought the Jeep in for service to fix an issue that was previously addressed by the Defendant. In other words, Brown never brought the Jeep in for service more than once for the same issue. Thus, there is no genuine issue of fact.

In addition, Plaintiff argues that because her confidence in the reliability and integrity of the vehicle are sufficiently shaken that this constitutes a breach of warranty. Other than Plaintiff's self-serving affidavit, there is no evidence to show her lost confidence. In fact, the opposite is true. Brown still drives the Jeep and uses it as her primary vehicle. Furthermore, she has not presented any evidence of any problems occurring with the Jeep since August of 2008 despite the fact that one year has passed and the Jeep must now have well over 80,000 miles on it. Thus, there is no genuine issue of fact here. *See Filipovic v. Fairchild Chevrolet*, 2001 Ohio App. LEXIS 4340, *12-13 (Cuyahoga Cty. 2001).

Brown also alleges that CincyAutos breached the contract when they told her that the transaction was final but yet asked her to return one week later to redo the paperwork since she failed to qualify for the necessary financing. To make a successful claim of breach of contract a Plaintiff must show the following: 1) the existence of an enforceable contract; 2) the performance (or excuse from performance) of the contractual obligations by the party seeking relief: 3) breach or failure to fulfill contractual obligations by the other party; and 4) damages suffered by the party seeking relief as a result of the breach. *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App. 3d 95, 108, 661 N.E.2d 218. Even if Brown could show the first three elements, she can not prove any damages here as this alleged breach worked to Brown's advantage as it lowered over $700 off the purchase price of the Jeep. Since damages are an essential element to a breach of contract, her claim must fail. *See Mihelich v. Active Plumbing Supply Co.*, 2009 Ohio 2248, P21 (Cuyahoga Cty. 2009).

B.      Magnuson-Moss Warranty Act violations

Brown alleges that CincyAutos violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.*, by failing to comply with its express and/or limited warranties obligations. (Doc. 2, ¶31). The elements of a violation of the Magnuson Moss Act are the same as for a breach of warranty. *Abele v. Bayliner Marine Corp.*, 11 F. Supp.2d 955, 961 (N.D. Ohio, 1997). In fact, "the applicability of the Magnuson-Moss Act is directly dependant upon a sustainable claim for breach of warrant." *Temple v. Fleetwood Enters., Inc.*, 133 Fed. Appx. 254, 268 (6th Cir. 2003) *citing LaBonte v. Ford Motor Co.*, 1999 Ohio App. LEXIS 4795, No. 74855, at *7 (Ohio Ct. App. Oct. 7, 1999). Thus, for the same reasons set forth above, there is no genuine issue of material fact at issue here.

C.      Consumer Sales Practices Act violations

Brown alleges that CincyAutos violated the Ohio Consumer Sales Practices Act ("CSPA"), O.R.C. §1345.02 *et seq*., by committing eight unfair or deceptive acts or practices. (Doc. 2, ¶34; Doc. 36, p14). O.R.C. §1345.02 states, in relevant part, that "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction."

First, Brown argues that it was unconscionable for CincyAutos to stall, delay and attempt to evade its legal obligation when Pittman failed to show up at the meeting with Brown to discuss getting her in a different vehicle and then not following up with her on that topic. Brown cites *Brown v. Lyons*, 43 Ohio Misc. 14 (Hamilton Cty. 1974) to support her claim and asserts that the following proposition is applicable: "it is an unconscionable act for a supplier like Kings Jeep to stall and delay and attempt to evade its legal obligations." (Doc. 36, p15). Pittman denies agreeing to meet with Brown or making those statements. However, even if he did, CincyAutos had no legal obligation to take back the Jeep and give Brown a different vehicle. Thus, there are no legal obligations here that CincyAutos was attempting to evade. Had evidence been shown that CincyAutos was stalling in relation to making the necessary repairs to the Jeep then that may very well be a violation of the CSPA; however, that is not the case here.

Second, Brown argues that it is deceptive for CincyAutos to fail to honor its express and/or implied warranties. For the same reasons set forth above under Section A, there is no issue of material fact.

Third, Brown argues that it is deceptive for CincyAutos to represent that the Jeep was "Certified Pre-Owned" when it was not. There is indisputable evidence that the Jeep was, in fact, a "Certified Pre-Owned" vehicle. The necessary documentation has been presented as evidence in this case and there is no question that the accompanying

warranty was honored by the Defendant. In addition, despite Brown's assertion to the contrary, CincyAutos did submit warranty claims to Chrysler. (See Doc. 38, Exh 1).

Fourth, Brown argues that it was deceptive for CincyAutos to represent that the vehicle was of a particular standard, quality, grade or style if it is not. For the same reasons set forth above, summary judgment is appropriate on this issue. There is no genuine issue of fact as to the Jeep being a Certified Pre-Owned vehicle.

Fifth, Brown argues that it is deceptive for CincyAutos to fail to provide a vehicle in accordance with its prior representations. Specifically, Brown argues that CincyAutos represented to her that the vehicle was "Certified Pre-Owned", that it was built brand new with a previous owner and that it had only been in a minor accident that resulted in no damage. As set forth above, the Jeep was "Certified Pre-Owned." As to the claim that Diefenbach told Brown that the Jeep "was built brand new with a previous owner." Diefenbach denies making such a statement and CincyAutos argues that the statement is true. The Jeep was built brand new in 2003 and had a previous owner. Brown testified that she took the phrase "built brand new with a prior owner" to mean that every part under the hood was replaced with a brand new part, i.e., a new engine, transmission, etc. (Doc. 14, pp20-21). Based upon the evidence provided, no reasonable juror could find that CincyAutos failed to provide a vehicle in accordance with its prior representations. It was represented that the Jeep was "Certified Pre-Owned" and it was. A reasonable juror could not find that CincyAutos committed an unfair or deceptive act or practice because Brown did not understand what "Certified Pre-Owned" meant.

As to the claim that it was deceptive for Diefenbach to state that the car was in a minor accident, Diefenbach denies making this statement. However, there is no dispute that Brown was provided with a Carfax report that specifically states that the Jeep had

been in two accidents, one of them causing severe damage and the other being a minor accident. A reasonable consumer would not rely on the statements of a salesmen in the face of a contradictory Carfax report. In addition, Brown admits she received the Carfax report prior to signing the necessary paperwork to purchase the Jeep. Although her deposition and affidavit conflict, she states in her affidavit that she received the Carfax report after she had already decided to purchase the Jeep but prior to signing any of the paperwork. Under this factual scenario, Brown had the Carfax report in her hands prior to "signing on the dotted line." She had sufficient notice that the Jeep had severe damage. There is no genuine issue of fact here. CincyAutos actions were not deceptive or unfair.

Sixth, Brown argues that it was deceptive for CincyAutos to represent that the Jeep came with a warranty when it did not. Again, the evidence is clear and there is no issue of fact. The Jeep was "Certified Pre-Owned" and came with a 3 month/ 3,000 mile mechanical warranty and a 8 year/80,000 mile powertrain warranty. Plaintiff admitted in her deposition that she did not pay for any of the repairs that were made by CincyAutos and there is evidence that certain repairs were submitted to Chrysler under the warranty. (Doc. 14, p52; Doc. 38, Exh. 1). Thus, there are no genuine issues of fact that exists.

Seventh, Brown argues that it is unconscionable for CincyAutos to knowingly take advantage of her inability to understand the language of the agreement in violation of O.R.C. §1345.03(B)(1) which states:

> In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
>
> (1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement.

Brown argues that it was her first vehicle purchase on her own and she showed her

inexperience in asking what a "Certified Pre-Owned" vehicle was.  However, in her deposition Brown admits that this was, in fact, her second purchase of a vehicle.  Although her parents were with her when she purchased a used Saturn, she had been through the process at least once before.  In addition,  there is no evidence to support her contention that CincyAutos knowingly took advantage of her inability to protect herself.  There is no evidence that she suffers from any physical or mental infirmities, ignorance or illiteracy.  Nor is there any evidence that Brown had an inability to understand the language of the agreement.  Merely asking what a "Certified Pre-Owned" vehicle meant does not give notice of her failure to understand the language of the agreement.

Finally, Brown argues that the Vehicle Purchase Contract includes several clauses attempting to limit her rights under Ohio law.  Specifically, at paragraph 5 it includes a binding arbitration clause and limits the statute of limitation to one year.  In addition, at paragraph 3, it includes a liquidated damages clause if the consumer does not accept delivery.  Brown argues that these terms are against public policy and therefore unfair in violation of the Consumer Sales Practices Act.  In support of her argument Brown cites to *Eagle v. Fred Martin Motor Co.*, 159 Ohio App.3d 150 (Summit Cty. 2004) but does not set forth any additional legal arguments as to how *Eagle* supports her claims nor does she state how the clauses are unfair other than being against public policy.  However, the Court in *Eagle* found that O.R.C. § 3145.01 *et seq.* does not expressly preclude arbitration clauses in consumer sales contracts.  *Id.* at 162.  In addition, the Court held that "pre-printed sales contract containing an arbitration clause that is a condition precedent to the final sale, *without more*, fails to demonstrate unconscionability of the clause." *Id.* at 173 (emphasis in original) *citing Harper v. J.D. Byrider of Canton*, 148 Ohio App. 3d 122,124 (Wayne Cty. 2002).  *Eagle* is silent as to liquidated damages and statutes of limitations.

14

In addition, the clauses that Brown complains of here either do not apply to Brown or are not being enforced against her. Without more than Brown's assertion to the contrary, she has not shown that the inclusion of certain clauses in her contact that are not being enforced against her are a violation of the CSPA.

  D.  FTC Used Car Window Sticker Rule and Consumer Act violations

  The Court previously granted summary judgment to plaintiff on liability finding that CincyAutos violated 16 CFR §455.2(c) and (e) by not including the name and address of the dealer and the name and telephone number of a person for Plaintiff to contact in case of complaints that might arise after the sale. CincyAutos now claims that it has a bona fide error defense that prevents damages from being asserted on this claim. O.R.C. §1345.11(A) states, in relevant part: "if a supplier shows by a preponderance of the evidence that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed against the supplier under division (D) of section 1345.07 of the Revised Code, no party shall be awarded attorney's fees, and monetary recovery shall not exceed the amount of actual damages resulting from the violation."

  The declarations of Robert C. Reichert set forth the procedure by which the Buyer's Guide is produced. To wit, a "temporary" Buyer's Guide is created by a clerk at the dealership who stamps the required information on to the form. Then an outside company prepares a "permanent" Buyer's Guild where the required information is preprinted onto the form. (See Doc. 38, Exh. D). Mr. Reichert asserts that the information missing from the Buyer's Guide at issue in this case was missing from the "temporary" Buyer's Guide and that apparently the clerk failed to carry out the task of stamping the required information on the form. Brown then purchased the Jeep before the "permanent" Buyer's Guide was

prepared.

Brown counters that despite this procedure being in place a vehicle was purchased by Frances Moskowitz on June 23, 2008 from Kings Dodge Chrysler Jeep without the Buyer's Guide affixed to the window. Once the Buyer's Guide was produced it did not contain the name and address of the dealership or the name and telephone number of the person to contact regarding complaints. (See Doc. 36-13). However, CincyAutos asserts that Ms. Moskowitz made her purchase at an entirely different dealership since CincyAutos does not own Kings Dodge Chrysler Jeep. Therefore, CincyAutos argues that it has no control over the business practices of Kings Dodge, Inc. After Kings Jeep (which is owned by CincyAutos) merged with Kings Dodge on September 1, 2007, CincyAutos began operating a Kia franchise and Kings Dodge operated a Chrysler franchise. CincyAutos and Kings Dodge, Inc. are two separate corporate entities that have separate management, file separate tax returns and have separate operating policies and procedures. However, Robert c. Reichert is the President and majority owner of both CincyAutos and Kings Dodge, Inc.

Even without the affidavit of Ms. Moskowitz, a question of fact remains. A reasonable juror could determine that the procedure in place at CincyAutos is not reasonably adopted to avoid the error. Evidence that the employee who affixes the Buyer's Guide to the vehicle window double checks to ensure that all the required information is included on the form would have likely met the burden of proof here; however, such evidence was not shown. Therefore, although it is unlikely that Brown can demonstrate damages on this claim since she testified that she knew where to take the Jeep for service, summary judgment must be denied.

E.    Motor Vehicle Sales Rule violations

Brown alleges that CincyAutos made statements that created, in the mind of a reasonable consumer, a false impression, failed to integrate all material statements into the written sales contract and raised the actual price of the Jeep in violation of OAC 109:4-3-16. (Doc. 2, ¶44-46). Brown argues that the following were violated:

> OAC 109:4-3-16(B)
> it shall be a deceptive and unfair act or practice for a dealer ... in connection with the advertisement or sale of a motor vehicle, to
>
> ***
>
> (3) use any statement ... in any advertisement or sales presentation which could create in the mind of a reasonable consumer a false impression as to any material aspect of said advertised or offered vehicle...
>
> ***
>
> (17) raise or attempt to raise the actual purchase price of any motor vehicle to a specific consumer...
>
> ***
>
> (22) fail to integrate into any written sales contract, all material statements, representations or promises, oral or written, made prior to obtaining the consumer's signature on the written contract with the dealer.... .

For the reasons set forth above in this opinion, there is no genuine issue of material fact here. The Jeep was "Certified Pre-Owned" and had undergone a 125-point inspection. Furthermore, the purchase contract specifically states, in all capital letters, that "the information you see on the window form overrides any contract provisions in the contract of sale." (Doc. 14, Exh. 4). Brown was given the Carfax report prior to finalizing her purchase. The price was, in fact, what they had agreed to. And the necessary repairs were timely made and at no cost to Brown.

Regarding the statement that the financing was final, Brown stated that "when I purchased the vehicle, I was told that the deal was final and that financing had been approved." (Doc. 36, Exh 1.) In addition, in her brief, she states that "when she left the dealership that day, Ms. Brown was told that the sale was final and that the vehicle was

hers." (Doc. 36, p23). These statements clearly demonstrate that they were made after Brown's signature was obtained on the written contract and therefore, OAC 109:4-3-16(B)(22) is not applicable.[3] In addition, CincyAutos lowered the price of the Jeep so that Brown could obtain the necessary financing. This action was of great benefit to Brown and is not deceptive or unfair.

F.     Fraud and Deceit

Brown alleges that CincyAutos made false representations and/or concealments of fact, such as, the Jeep was "Certified Pre-Owned"; concealed substantial defects; the Jeep had only been in one minor fender bender and that the lien payoff on her trade in vehicle was $3,000. (Doc. 2, ¶48). Common-law fraud requires proof of the following elements: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas*, 97 Ohio St. 3d 69, 74 (Ohio 2002) quoting *Russ v. TRW, Inc.* (1991), 59 Ohio St. 3d 42, 49 (1991).

There has been no evidence shown to this Court where a reasonable juror could determine that CincyAutos made a representation or concealment that was false. Again, the documentation proves that the Jeep was, in fact, "Certified Pre-Owned" and Brown was provided with the documentation to support this fact as well as the limited warranty that

---

[3]OAC 109:4-3-16(B)(3) is also inapplicable as the statement was not a material statement regarding any aspect of the vehicle but instead was a statement relating to the sales transaction.

accompanies "Certified Pre-Owned" vehicles. Second, the evidence is clear that it was Brown herself who informed CincyAutos as to her pay off amount. (Doc. 14, p62-63). As to the minor fender bender statement by Diefenbach, Brown was provided the Carfax report that specifically stated the accident history of the Jeep. Thus, she could not have justifiably relied on the statement of Diefenbach as to its accident history. Finally, as to the concealment of substantial defects, there has been no evidence presented that anyone at Jeep knew of the "laundry list" of defects in the Jeep, nor is there been any evidence, other than speculation, that the Jeep did not pass the 125 point inspection that qualifies a car as "Certified Pre-Owned." Although Brown does point out that the used car sales manager was advised that the Jeep's brakes were pulsating, this is not a problem that Brown experienced with the Jeep as she did not complain about pulsation, only a burning smell. Even if it the pulsating brakes were an issue and were not disclosed, this does not mean that CincyAutos was aware of "a laundry list" of problems prior to the sale of the Jeep as Brown contends. One tree does not make a forest. Brown has not presented any evidence to show that had she known the Jeep had pulsating brakes she would not have purchased it.

Brown also argues that she had to pay for repairs (See Doc. 36, p27); however, the evidence is clear that she, in fact, did not. What she did do was buy a belt from AutoZone; however, that decision was one made by Brown and not dictated by CincyAutos since there has been no evidence presented that Brown requested that CincyAutos fix the Jeep when it broke down on the highway. Additionally, the funds paid to Hamilton-Fairfield Dodge Jeep were limited to her deductible which is required under her warranty. It is important to point out that the deductible was also required for the repairs performed by CincyAutos; however, CincyAutos did not require Brown to pay that deductible. No reasonable juror

could conclude that the elements of fraud can be shown in this case.

G.    Motor Vehicle Repair Rule and Consumer Sales Practices Act violations.

Brown alleges that CincyAutos failed to provide her with a itemized list of repairs performed or services rendered, including the identity of the individual performing the repair or service; failed to provide her with a copy of all documents which were signed or initialed by Brown; and failed to give her any parts that were replaced or make known to her that it intended to reuse or return the parts. (Doc. 2, ¶¶ 56-58).  The Ohio Administrative Code states as follows:

> OAC 109:4-3-13(C)
> in any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to
> ***
> (12) fail to provide the consumer with an itemized list of repairs performed or services rendered, including a list of parts or materials and a statement of whether they are used, remanufactured or rebuilt, if not new, and the cost thereof to the consumer, the amount charged for labor, and the identity of the individual performing the repair or service
>
> ***
>
> (13) fail to tender to the consumer any replacement parts, unless the parts are to be rebuilt or sold by the supplier, or returned to the manufacturer in connection with warranted repairs or services, and such intended reuse or return is made known to the consumer prior to commencing any repair or service.

Brown argues that a violation of the above regulations is also a per se violation of the Consumer Sales Practices Act.

Brown argues that CincyAutos failed to document each repair, specifically arguing that one repair order was opened from May 9, 2007 until June 18, 2007.   However, CincyAutos has stated that the repair order was held open until Chrysler submitted the warranty payment.  In addition, Brown testified that the documentation submitted by her counsel accurately reflects her repairs.  Therefore, the evidence is clear that the Jeep was

brought to CincyAutos for repair or service on four separate occasions plus one additional time to obtain the keyless entry for the Jeep. There is no documentation to support the keyless entry visit; however, since the visit did not require any repairs to be performed or services to be rendered documentation was not required. Thus, there is no evidence to support the fact that each repair was not documented.

As to the argument that CincyAutos failed to identify the service technician in its records, based upon the documents provided, the Court is at a loss as to how Brown makes these allegations. The invoices, at the top right hand corner, state who the service advisor is by name and number. (See Doc. 14, Exh 12; Doc. 14, Exh 13, p2; Doc. 14, Exh. 14, p2-3.) Additionally, the vehicle history report prepared by Kings Dodge, Inc. provides a technician number which is a number specifically assigned to each technician.

However, of all the documentation provided to support the repairs made to the Jeep only one of them contains Brown's initials has having received an estimate and accepting the repair order. (See Doc. 33, Exh. A., CIN 0221). CincyAutos basically makes the argument that since Brown provided the documents that they must have been given to her. However, the weakness in this argument is that Brown stated in her deposition that she had to request the documentation from CincyAutos because she was not handed one after each visit. (Doc. 14, p15). There is no evidence that she was provided with the documentation, except CIN 0221. Thus, a question of fact remains as to this narrow issue.

In addition, Brown states that the repaired parts were not returned to her, offered to be returned to her, nor was she informed that they would be returned to the manufacturer in connection with warranted repairs or services. CincyAutos argues that in the case of a warranty repair that the rule does not require the parts to be returned to the customer since such parts are required to be returned to the manufacturer. OAC

109:4-3-13(C)(13). Of the four visits to CincyAutos, two required that parts be replaced: the May 9, 2007 visit and the October 15, 2007 visit. The May 9th visit involved repairs covered under the warranty. (See Doc. 38-2, p4). Thus, those parts were sent to Chrysler. Under OAC 109:4-3-13(C)(13), the only requirement then is that it be "made known to the consumer prior to commencing any repair or service" that the parts will not be returned to the customer but instead will be sent to the manufacturer. Here, the only evidence that it was made known to Brown was the sign posted at CincyAutos informing its customers that "parts replaced under warranty or to be rebuilt or sold by us will not be returned. All other parts will be made available to you." (Doc. 33, Exh. B). A question of fact exists as to whether or not the posting of this sign is sufficient to satisfy OAC 109:4-3-13(C)(13).

As to the October 5, 2007 visit, the battery needed to be and, in fact, was replaced. There is no evidence in the record that the battery was returned to Chrysler under the warranty program. In addition, there is no evidence in the record that CincyAutos intended to rebuild or sell the battery. Therefore, the battery should have been returned to Brown, unless she stated otherwise. And there is no evidence in the record demonstrating that she, in fact, stated otherwise. Thus, a genuine issue of material fact exists as to this issue as well.

III.    Conclusion.

Based upon the foregoing, Defendant's motion for summary judgment is GRANTED, in part, and DENIED, in part. The claims remaining for trial are whether CincyAutos violated the Motor Vehicle Repair Rule by (a) failing to provide repair documentation to Brown; (b) failing to make it known to her that certain warranty parts would not be returned to her but instead returned to Chrysler; and (c) failing to return the battery to her. In addition, whether CincyAutos has a bona fide error defense to the violation of the FTC

Used Car Window Sticker Rule.

**IT IS SO ORDERED**.

_s/Michael R. Barrett_____
UNITED STATES DISTRICT JUDGE